1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2   Joseph M. Paunovich (Bar No. 228222)
      joepaunovich@quinnemanuel.com
3   865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017-2543
4  Telephone: (213) 443-3000
   Fax: (213) 443-3100
5
6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Adam J. DiClemente (Bar No. 5287693) (*pro hac vice* pending)
7     adamdiclemente@quinnemanuel.com
    Jacqueline M. Stykes (Bar No. 5656046) (*pro hac vice* pending)
8     jacquelinestykes@quinnemanuel.com
     51 Madison Avenue, 22nd Floor
9  New York, New York 10010
   Telephone: (212) 849-7000
10 Fax: (212) 849-7100
11
12 Attorneys for Plaintiff

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                  WESTERN DIVISION

16

17 | MOLDEX-METRIC, INC., a | Case No. 2:21-cv-02911 |

California corporation,

18                                    | **COMPLAINT FOR:** |

19              Plaintiff,

20                                    | **(1) False Advertising And Unfair Competition (Lanham Act § 43(a));** |

21            vs.

22                                    | **(2) Unlawful, Unfair, And Fraudulent Business Practices (Bus. & Prof. Code §§ 17200, et seq.);** |

23 | HONEYWELL, INC., a Delaware corporation,

24

25              Defendant.          | **(3) False Advertising (Bus. & Prof. Code §§ 17500, et seq.).** |

26

27                                    | **DEMAND FOR JURY TRIAL** |

28

Plaintiff Moldex-Metric, Inc. ("MOLDEX"), by and through its undersigned attorneys, brings this action against defendant Honeywell, Inc. ("Honeywell") arising out of Honeywell's false and deceptive sales and marketing claims for their recently launched product, the "HL400-AM Antimicrobial-Protected Dispenser" for earplugs, and hereby alleges as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity of citizenship); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.    On information and belief, this Court has personal jurisdiction over Defendant Honeywell because it conducts business within the State of California and has committed the acts of unfair and deceptive trade practice, unlawful business, and false advertising and unfair competition that have given rise to this action in this district.  Honeywell has established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Honeywell conducts business within this judicial district and/or a substantial part of the events giving rise to the alleged claims in this action occurred in this judicial district.

## II.    THE PARTIES

4.    Plaintiff MOLDEX is a California corporation with its principal place of business at 10111 West Jefferson Boulevard, Culver City, California 90232.

5.    Defendant Honeywell is a Delaware corporation with its principal place of business at 300 South Tryon Street Charlotte, North Carolina, and at all times relevant hereto was and is doing business in the State of California sufficient to give rise to personal jurisdiction in this forum.

### III.  <u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

6.     Since 1982, MOLDEX has been engaged in the business of manufacturing and selling earplugs.  As part of its broad line of personal protective equipment, MOLDEX's products include a number of earplug dispensing systems which allow users—frequently in industrial and commercial settings where hearing protection is mandated by health and safety regulations—to dispense an individual set of disposable earplugs on demand.  These systems, including those sold under the ECOSTATION™ and PLUGSTATION® names, are designed to keep the plugs clean and sanitary by dispensing them directly into a user's hand, and not into a dispensing tray that could collect dust and contaminants.  MOLDEX's dispensing systems are broadly adopted in industrial and commercial operations, with MOLDEX having developed a position of trust and dependability in the market.

7.     The global COVID-19 Pandemic significantly increased public concern about matters of hygiene, health, and safety, especially with respect to protection and sanitization of shared surfaces in efforts to decrease spread of the virus.  This increased public attention was met by efforts from some companies to market, sell, and profit from products claiming to provide health and safety benefits.  Honeywell is among these companies.

8.     Beginning in late 2020, Honeywell began preparing to sell an earplug dispenser system named the "***HL400-AM Antimicrobial-Protected Dispenser***." Honeywell launched this product in early 2021, and it is currently offered for sale and sold across the United States and, on information and belief, internationally.

9.     On information and belief, Honeywell expressly designed its HL400-AM Antimicrobial-Protected Dispenser "to use the existing wall mount" sold by MOLDEX, and the product is intended to—and does—compete directly with MOLDEX's products.

10.     Images   of   Honeywell's   HL400-AM   Antimicrobial-Protected Dispenser, and the logo used for that product, obtained from a brochure hosted on Honeywell's public website, are produced below:




11.     Honeywell's   logo   for   the   HL400-AM   Antimicrobial-Protected Dispenser features the word "ANTIMICROBIAL" prominently at its center without additional context or clarification regarding how, or for what purpose, the product features   antimicrobial   properties.     Additionally,   the   logo   uses   a   graphic representation of a virus which is consistent with graphic representations of the novel   coronavirus   underlying   the   COVID-19   Pandemic—including   graphic representations   created   by   the   United   States   Centers   for   Disease   Control—a spherical mass with protruding spikes.

12.     On   information   and   belief,   an   internal   Honeywell   presentation, prepared   as   part   of   its   "Protect One. Protect All."   sales   campaign,   instructed Honeywell's salesforce to "***reach out to [its] top-targets, including COVID priority***

*targets*," to "*[t]ell them about . . . [the] Antimicrobial Earplug Dispenser*" and provided its salesforce with a set of "suggested talking points" to generate interest and sales for the product.

13.     Honeywell instructed its salesforce to inform prospective purchasers that "[r]isks in industrial workplaces have multiplied" and to assert that their new product offering would allow users to "[b]enefit from 99.9% cleaner shared surfaces and confidence that the workplace is safe."

14.     Honeywell directed its sales agents to end sales calls for the HL400-AM Antimicrobial-Protected Dispenser by asking customers "how many they would like to order to help with their current efforts to keep their staff safe."

15.     Other Honeywell sales and marketing materials for its new dispensers, further discussed below, are consistent with these governing "talking points."

16.     While the COVID-19 Pandemic has increased efforts to sell products claiming to protect users against harmful microbes, including Honeywell's efforts with the HL400-AM product, the use of marketing claims regarding purported antimicrobial properties to sell products is not new.

17.     The federal Environmental Protection Agency ("EPA"), implementing the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA") and the duly promulgated regulations under that Act, has longstanding rules regarding such marketing claims.

18.     These rules are straightforward and important to protecting public health, as the EPA's website explains:

> *FIFRA does not allow companies to make public health pesticidal claims for any product distributed or sold unless the product has been approved and registered by EPA or is covered by an exemption from registration*.  EPA is concerned about these claims because, in addition to being unlawful, *they are also potentially harmful to the public* (e.g., if people believe that a product has a self-sanitizing quality, they may become lax in their hygiene practices).  Practicing standard hygiene practices has been proven to prevent the

transmission of harmful microorganisms and, therefore, reduce the possibility of public health risk. (emphases added).

19.     Honeywell's sales and marketing statements for the HL400-AM Antimicrobial-Protected Dispenser include numerous public health claims notwithstanding that the product is neither approved and registered by the EPA, nor covered by any exemption to registration.

20.     Accordingly, as further established below, Honeywell's statements are false and deceptive to the consuming public and constitute an unlawful, unfair or fraudulent business act and unfair, deceptive, untrue or misleading advertising.

21.     Honeywell's improper actions harm public health by creating the very false sense of security as to hygiene the EPA warns against, and also harm its market competitors—including MOLDEX—by obtaining sales, taking market share, and harming competitors' reputations in the market, through its false and deceptive conduct.

22.     Honeywell's sales of the HL400-AM Antimicrobial-Protected Dispenser, driven by misleading claims regarding alleged benefits to human health and safety, have, and will continue to, divert sales from MOLDEX's earplug dispensers, which directly compete with Honeywell's products.

**Honeywell Violates FIFRA'S Registration Requirement**

23.     FIFRA requires the registration of any substance intended to prevent, destroy, repel, or mitigate pests.  Pursuant to 7 U.S.C. § 136a(a), absent registration, "no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter."  The statute defines "pesticide" as "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest," and defines a "pest" as "any other form of terrestrial or aquatic plant or animal life or virus, bacteria, or other micro-organism."  7 U.S.C. § 136(t) & (u).

24. The Code of Federal Regulations confirms that a "substance is considered to be intended for a pesticidal purpose, and thus to be a pesticide requiring registration if . . . [t]he person who distributes or sells the substance claims, states, or implies (by labeling or otherwise) . . . [t]hat the substance . . . can or should be used as a pesticide . . . ." 40 C.F.R. §152.15.

25. Honeywell's HL400-AM Antimicrobial-Protected Dispenser must be registered pursuant to FIFRA because it includes a "substance" and "mixture of substances intended for . . . mitigating any pest" under the statutory definition.

26. This is confirmed by a 2021 Honeywell "Battlecard"—believed to be a training document for Honeywell's salesforce—about the HL400-AM product, explaining that, during manufacture of the dispenser's parts, including the "turn knob," a "precisely specified amount of antimicrobial agent is added to the resin."

27. The same document confirms that Honeywell claimed, stated, and implied, that the HL400-AM Antimicrobial-Protected Dispenser should be used to mitigate pests. The "Battlecard" states that the product contains an "antimicrobial additive that makes the dispenser surfaces, including the turn knob cleaner," and further explains that the term "[a]ntimicrobial refers to many types of microorganisms, such as virus, fungus and bacteria," each of which is within FIFRA's definition of "pest."

28. On information and belief, Honeywell has neither sought nor received an EPA registration or any state registration for the HL400-AM Antimicrobial-Protected Dispenser, nor the antimicrobial agent it contains.

29. Notwithstanding its failure to obtain registration under FIFRA, and in direct violation thereof, Honeywell is actively selling and distributing the HL400-AM Antimicrobial-Protected Dispenser across the United States, including but not limited to in the State of California, and on information and belief, distributing the product internationally.

-6-

**Honeywell's Product Is Not Within The "Treated Article Exemption" To FIFRA Registration**

30.      FIFRA and its implementing regulations provide certain exemptions from the default registration requirement, one of which is the "treated article" exemption set forth in 40 C.F.R. § 152.25(a).

31.      The EPA's March 6, 2000 Pesticide Registration (PR) Notice 2000-1 addresses the "Applicability of the Treated Articles Exemption to Antimicrobial Pesticides."  The exemption applies only if both of the following conditions are met: "(1) the incorporated pesticide is registered for use in or on the article or substance, and; (2) *the sole purpose of the treatment is to protect the article or substance itself*."  (emphasis added).

32.      The second condition prohibits the manufacturer or seller of a pesticide product from making "public health claims that extend beyond the protection of the article itself."  Thus, the EPA requires products qualifying for the treated article exemption to display clarifying statements informing the consuming public that the pesticide properties of the product are directed at protecting the product from harm, and disavowing that those properties confer human health benefits.

33.      Furthermore, the EPA's March 6, 2000 Notice provides specific guidance on use of the term "antimicrobial" in product claims, descriptions, and names, such as those Honeywell uses in and around its "HL400-AM Antimicrobial-Protected Dispenser."

34.      The March 6, 2000 Notice states that the EPA "considers an article or substance to make a public health claim if any of the following claims are made either explicitly or implicitly . . . . An unqualified claim of 'antimicrobial' activity."  Specifically, the EPA established that "claims such as 'antimicrobial'" are not "consistent with the intent of [the treated article exemption] if they are (1) part of the name of the product; or (2) not properly qualified as to their intended non-public health use."

-7-

35.     Honeywell's HL400-AM Antimicrobial-Protected Dispenser does not qualify for an exemption from FIFRA registration as a "treated article" because Honeywell makes multiple express and implied human health claims regarding the product's antimicrobial properties.

36.     Honeywell's prominent inclusion of the term "antimicrobial" in the name of its product establishes that the product is not entitled to invoke the treated article exemption pursuant to the EPA's guidance.

37.     Honeywell has made or caused to be made, multiple marketing claims regarding the HL400-AM Antimicrobial-Protected Dispenser that expressly and implicitly assert a benefit to human health and safety, as opposed to mere protection of the product itself, including, but not limited to, the following:

a) "Cleaning and disinfection during all phases of reopening workplaces is a core component of keeping work environments safe.  Introducing Honeywell's HL400-AM Antimicrobial-Protected Dispenser for earplugs designed to meet today's safety needs."

b) "Benefit from a dispenser with built-in enhanced cleanliness."

c) "Workers can now benefit from a dispenser with built-in enhanced cleanliness."

d) "Customer Gains: Protected shared surface . . . . Customer Pain Points: Keeping employees feeling safe at work."

e) "[R]educes cross-contamination risks."

f) "Benefit from 99.9% cleaner surfaces, added protection around the clock, meeting today's safety needs."

g) "Benefit from 99.9% cleaner surfaces and confidence that the workplace is safe."

h) "Protects your hearing and reduces antimicrobial risks.  The antimicrobial additive reduces the ability of microorganisms such as virus, bacteria, fungus to live on its surface."

-8-

38.    On March 25, 2021, Honeywell issued a press release titled "Honeywell Introduces New Earplug Dispenser Featuring Antimicrobial Protection," which continued its tactic of making express and implied human health claims regarding the antimicrobial features of its product.  Among other statements, the press release emphasized that the "antimicrobial-protected earplug dispensers give workers convenient and quick access to their hearing protection," that "[w]orker safety is at the heart of everything we [Honeywell] do," that the product is "treated with an antimicrobial additive to help meet operations' safety needs as employees return to jobsites," and that that the "dispenser is helping employers and jobsites benefit from durably cleaner surfaces."

39.    The marketing materials and other public statements regarding Honeywell's HL400-AM Antimicrobial-Protected Dispenser do not contain adequate clarifying statements expressing that the product's antimicrobial properties are limited to protection of the dispenser itself, and do not provide protections to users of the dispenser and/or the earplugs it contains.  The statements contained in these materials are false and misleading.

40.    The packaging for Honeywell's HL400-AM product does not contain adequate clarifying statements expressing that the product's antimicrobial properties are limited to protection of the turn-knob on the dispenser itself, and does not provide protections to users of the dispenser and/or the earplugs it contains.  The statements contained in these packaging materials are false and misleading.

**Honeywell Is Not Exempt From Registration Under FIFRA's "Supplemental Distribution" Provision**

41.    On information and belief, the antimicrobial agent incorporated into the plastic components of Honeywell's HL400-AM Antimicrobial-Protected Dispenser are pesticide products manufactured by the Microban Products Company ("Microban") under the name Microban Microguard RTU.

COMPLAINT

42.   Pursuant to 40 C.F.R. §152.132, a person that has obtained an EPA registration for a pesticide—the "registrant"—"may distribute or sell [that] registered product under another person's name . . . ."  The person, often a company, distributing the registrant's product is the "distributor."   A distributor of a registrant's product "is considered an agent of the registrant for all intents and purposes under [FIFRA]."   Thus, a distributor is bound by the same requirements for, and limitations on, marketing and selling that product as those binding the registrant.

43.   In order to invoke the supplemental distribution exception to FIFRA registration, both the distributor and the registrant must take specific steps in fulfillment of specific regulatory requirements set out in the CFR.

44.   The registrant must have "submitted to the [EPA] for each distributor product a statement signed by both the registrant and the distributor listing the names and addresses of the registrant and the distributor, the distributor's company number, the additional brand name(s) to be used, and the registration number of the registered product."  40 C.F.R. § 152.132(a).

45.   If the signed statement requirement is fulfilled, the CFR provides additional conditions, each of which must be met to claim supplemental distribution rights.   40 C.F.R. §§ 152.132(b)–(e).   As relevant here, because a distributor is permitted to distribute pesticide under the registration obtained by the registrant, the "label of the distributor product [must be] the same as that of the registered product, except that: the product name of the distributor product may be different (but may not be misleading)," and "[s]pecific claims may be deleted, provided that no other changes are necessary."  40 C.F.R. §§ 152.132(d)(1), (5).

46.   Microban holds a Conditional Registration from the EPA for Microban Microguard RTU, issued on August 16, 2018 bearing EPA Registration No. 42182-11.

-10-

47.   Microban's conditional registration for the Microban Microguard RTU pesticide includes a delineation of "Approved Uses," each of which is expressly for the protection of the device or object on which the pesticide is applied (or into which it is incorporated), and none of which are for promotion or protection of human health.  Microban's conditional registration provides:

> APPROVED USES: Microban Microguard RTU is effective against odor causing bacteria, bacteria which cause staining and discoloration, fungi (mold and mildew) and algae as a static agent.  It can be used as a final bacteriostatic finish on the following items to impart bacteriostatic/fungistatic (mold and mildew) activity: Plastics, fiberglass, metals, glass, wood, ceramics, stone, natural materials, composites: including, roofing materials (tiles, shakes, shingles, granules, stone, membranes, felt, underlayment and synthetic overcoats); building materials and components including siding, wallboard, wood and wood composites and insulation; non·food contact hard surfaces including floors and floor covering, walls, ceilings, ceiling tiles, ceramic tile, non-food contact countertops….

48.   Consistent with the foregoing "approved uses," the conditional registration for Microban Microguard RTU includes "optional marketing language" which also makes clear that the pesticide is for use only in protecting objects to which it is applied.  For example, the marketing language includes that the product "is a fast, easy and affordable solution for treating surfaces against staining and discoloration caused by mildew."  This, and the other optional marketing language in the conditional registration do not include express or implied claims for the protection of human health.

49.   On information and belief, Microban has not submitted a statement to the EPA authorizing and disclosing Honeywell as a supplemental distributor as required by 40 C.F.R. § 152.132(a).  Accordingly, Honeywell cannot claim entitlement to the supplemental distributor exemption to registration.

50.   Even if Microban had submitted the required information to the EPA to authorize Honeywell as a supplemental distributor, Honeywell's representations and

-11-

marketing claims regarding the HL400-AM Antimicrobial-Protected Dispenser impermissibly exceed the "approved uses" of Microban Microguard RTU set forth in Microban's Conditional Registration.

51.     As set forth above, Honeywell markets its product with multiple claims that explicitly and implicitly convey benefits to human health, and does not limit its claims to those asserting that the pesticide protects only the turn-knob of the dispenser device itself.   These include, but are not limited to, statements that "[w]orkers can now benefit from a dispenser with built-in enhanced cleanliness," that the product's pesticidal properties "reduce[] cross-contamination risks," and that users/purchasers will "[b]enefit from 99.9% cleaner surfaces."

52.     Honeywell, accordingly, cannot be exempt from FIFRA registration with the EPA under the supplemental distribution exception.

**Honeywell Actively Sells And Markets The HL400-AM Antimicrobial-Protected Dispenser**

53.     On information and belief, Honeywell's late 2020 internal presentation regarding the HL400-AM Antimicrobial-Protected Dispenser included a "Regional GTM" analysis.  "GTM" is a business acronym for a "go-to-market" strategy.

54.     Based on Honeywell's internal presentation, and on further information and belief, this go-to-market strategy established that inventory of the HL400-AM Antimicrobial Protected Dispenser was available, and that shipment of "[s]amples to sellers" started as of November 26, 2020.

55.     Honeywell's go-to-market strategy for this product indicated its intention that it will undertake a "Road Show & Partner Training" across "all Strategic & Regional Accounts" to assess the "System Readiness of partners to adopt [this] solution" from the fourth quarter of 2020 through the fourth quarter of 2021.   In other words, on information and belief, Honeywell has planned an extensive sales program for the HL400-AM Antimicrobial-Protected Dispenser to build its market and grow sales throughout 2021.

-12-

56.     Honeywell participated in the 2021 Global National Safety Council Congress & Expo, conducted virtually pursuant to guidance for the COVID-19 Pandemic, and exhibited the HL400-AM Antimicrobial-Prospected Dispenser at this event.

57.     The National Safety Council's exhibitions are significant and important marketing events for business development and marketing in the personal protective equipment industry.  These exhibitions are attended by manufactures of protective equipment and retailers who purchase these products and sell them on to end-users.  By participating in the 2021 Congress & Expo, and exhibiting its HL400-AM product, Honeywell marketed and advertised its product to an important network of decision-makers in the market for earplug dispensing systems.

58.     In addition to participating in the 2021 Congress & Expo, Honeywell entered its HL400-AM Antimicrobial-Protected Dispenser product into the "202ONE 'Best In Show' New Product Showcase" sponsored by the exhibition, and provided the following information to the Global National Safety Council for inclusion in its materials and website:

> Introducing Honeywell's HL400-AM Antimicrobial-Protected Dispenser for Earplugs ***designed to meet today's safety needs***. ***Workers can now benefit from a dispenser with built-in enhanced cleanliness***.  The additive releases slowly to reduce the bioburden on the turn knob, making it cleaner.  Your trusted hearing protection is available in multiple refill options, including canisters and zip-top bags for easy refilling.  (emphasis added).

59.     The advertising copy reproduced above contains false and misleading statements, including claims explicitly and impliedly asserting human health benefits notwithstanding EPA and FIFRA regulations.  The information stated above was accompanied by an image of a worker using the HL400-AM Antimicrobial-Protected Dispenser to dispense a set of earplugs.  That image is reproduced below:

-13-

1
2
3
4
5
6
7
8



9    60.    The Honeywell HL400-AM Antimicrobial-Protected Dispenser is
10  currently available for direct-to-consumer purchase, including but not limited to
11  through Grainger, a leading distributor of industrial supplies, equipment, and tools,
12  including personal protective equipment such as earplugs.

13    61.    Honeywell's webpage dedicated to this product, which it describes as
14  the "Antimicrobial HL400 Dispensers for Earplugs" provides information and a link
15  on "where to buy" the product.  Following the "where to buy" link, selecting the
16  "safety" option, and further selecting the United States, reveals a total of 4,343
17  "authorized distributors" across the United States.  The map reproduced below was
18  generated by Honeywell's website in response to actions described in this
19  paragraph:

20
21
22
23    
24
25
26
27
28

COMPLAINT

**Honeywell's Marketing Claims For The HL400-AM Antimicrobial-Protected Dispenser Have Harmed And Will Continue To Harm MOLDEX And The Consuming Public**

62.   MOLDEX and Honeywell compete in the same markets for the same customers for sales of their respective earplugs and earplug dispensers.

63.   On information and belief, Honeywell's late 2020 internal presentation includes a "competitive analysis" acknowledging that MOLDEX is its direct competitor and targets its products to markets "[t]he same as we [Honeywell] do."

64.   Honeywell's internal presentation regarding its strategy for launching and selling the HL400-AM Antimicrobial-Protected Dispenser includes, on further information and belief, an "Industry Overview" summary recognizing that MOLDEX is the "#2 provider" in the market with at least 13% market share.

65.   Honeywell's HL400-AM Antimicrobial-Protected Dispenser is intended to and does compete directly with MOLDEX's products.

66.   On information and belief, Honeywell expressly designed its HL400-AM dispenser "to use the existing wall mount" sold by MOLDEX for use with MOLDEX's products and identified this as a "weakness" it could "exploit" to drive its own sales and obtain market share.

67.   Honeywell's false and misleading statements regarding the "antimicrobial" benefits of its HL400-AM Antimicrobial-Protected Dispenser falsely suggest it is comparatively safer than competitors' products, including MOLDEX's products.  These claims are unsubstantiated and untrue.

68.   Honeywell's false and misleading statements regarding the "antimicrobial" benefits of its HL400-AM Antimicrobial-Protected Dispenser are a contributing factor to consumer decisions to purchase Honeywell's product instead of, or as a replacement for MOLDEX's products.

69.   On information and belief, customers for MOLDEX's earplug dispensing stations have, are, and will purchase Honeywell's HL400-AM

-15-

Antimicrobial-Protected Dispenser as a replacement for MOLDEX's products, including because of Honeywell's explicit and implied claims that the HL400-AM product confers human health benefits and can improve workplace safety.

70.     MOLDEX has suffered and will continue to suffer actual harm to its business, reputation, and goodwill, as a result of direct diversion of sales and damage to reputation and goodwill associated with MOLDEX.

71.     The false and misleading statements regarding the "antimicrobial" benefits of Honeywell's HL400-AM Antimicrobial-Protected Dispenser harm the consuming public, including by creating a false belief that users of the dispenser product obtain health protections from its purported "antimicrobial" properties, and further through a false belief that the purported "antimicrobial" properties of the product eliminate or reduce the need to engage other hygienic (*e.g.,* handwashing after use) or sanitization (*e.g.*, regular cleaning of the shared dispenser) practices.

72.     On information and belief, Honeywell is in the early stages of bringing the HL400-AM Antimicrobial-Protected Dispenser to the market, having launched it in late 2020.  MOLDEX and the consuming public will continue to suffer the harms identified above so long as Honeywell's HL400-AM Antimicrobial-Protected Dispenser product remains on the market, and unless and until Honeywell is enjoined from making false and misleading human health claims regarding that product's "antimicrobial" properties.

**<u>FIRST CAUSE OF ACTION</u>**

**<u>False Advertising and Unfair Competition, Lanham Act § 43(a)</u>**

73.     MOLDEX repeats, realleges and incorporates herein by reference the allegations contained in the preceding paragraphs as if fully set forth here.

74.     Section 43(a) of the Lanham Act provides that it is unlawful to use false or misleading statements of fact in connection with goods or services offered in commerce.  15 U.S.C. § 1125(a)(1)(B) states:

-16-

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .in commercial advertising or promotion, misrepresents the nature, characteristics, qualities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

75.    In selling the HL400-AM Antimicrobial-Protected Dispenser, Honeywell has engaged in, and continues to engage in, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act.   Specifically, Honeywell falsely advertises the HL400-AM Antimicrobial-Protected Dispenser provides direct human health benefits, which constitutes a misleading representation in violation of the Lanham Act because it falsely suggests that the pesticide protects consumers rather than the product.

76.    On information and belief Honeywell's labeling, marketing, sales calls, and product displays at trade shows, have misrepresented the nature, characteristics, or qualities of their product by falsely alleging direct human health benefits to the consumer.

77.    By making such misrepresentations about their product, Honeywell has engaged in false advertising under 15 U.S.C. §1125(a)(1)(B) and Honeywell's conduct has created deception among consumers and members of the general public as to nature, characteristics, or qualities of their products.

78.    Upon information and belief, Honeywell's false advertisements were circulated throughout the United States in interstate commerce and falsely misrepresent the nature, characteristics or qualities of the HL400-AM Antimicrobial-Protected Dispenser, or create a substantial likelihood of confusion regarding the nature, characteristics or qualities of the HL400-AM Antimicrobial-Protected Dispenser.  These statements are material, are explicitly and/or impliedly false, and violate 15 U.S.C. § 1125(a)(1)(B).

-17-

79.     Honeywell's false and misleading statements are likely to mislead and deceive consumers into purchasing the HL400-AM Antimicrobial-Protected Dispenser instead of a MOLDEX product.   Honeywell's conduct is willful, deliberate and in bad faith.

80.     Honeywell's illegal conduct is continuous and ongoing, and Plaintiff is suffering and will continue to suffer irreparable harm, for which MOLDEX has no adequate remedy at law, unless Honeywell is enjoined from making false and misleading statements regarding the characteristics of the HL400-AM Antimicrobial-Protected Dispenser.

81.     As a direct and proximate result of Honeywell's acts of unfair competition and false advertising, MOLDEX has suffered and will continue to suffer actual harm to its business, reputation, goodwill.

## **SECOND CAUSE OF ACTION**

## **Violation Of California Business And Professions Code §§ 17200 et seq.**

82.     MOLDEX repeats, realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth here.

83.     As alleged above, including in paragraphs 23 through 29, Honeywell does not have a valid registration for the HL400-AM Antimicrobial-Protected Dispenser and thus is illegally selling and distributing this product.

84.     As alleged above, including in paragraphs 30 through 40, the HL400-AM Antimicrobial-Protected Dispenser is not within the "treated article exemption" to registration.

85.     As alleged above, including in paragraphs 41 through 52, the HL400-AM Antimicrobial-Protected Dispenser is not exempt from registration under FIFRA's supplemental distribution provision.

86.     Honeywell's practices constitute an unlawful business act in violation of California Business and Professions Code §§ 17200 et seq. because Honeywell is

unlawfully marketing, selling, and distributing the HL400-AM Antimicrobial-Protected Dispenser without a valid EPA registration.

87.    Honeywell's practices constitute unfair, deceptive, untrue or misleading advertising in violation of California Business and Professions Code §§ 17200 et seq. because they utilize false or misleading statements and claims about the nature and quality of their product, sold as the HL400-AM Antimicrobial-Protected Dispenser.

88.    Honeywell's practices constitute an unfair business act in violation of California Business and Professions Code §§ 17200 et seq. because they are utilizing knowingly (and literally) false or misleading statements and claims about the nature and quality of their product, sold as the HL400-AM Antimicrobial-Protected Dispenser, that have resulted in actual harm to MOLDEX as well as to California consumers who have purchased their mis-branded products.

89.    Honeywell's practices constitute unfair competition in violation of Business and Professions Code §§ 17200 et seq. because (1) they are unlawful, unfair or fraudulent, and (2) they involve unfair, deceptive, untrue or misleading advertising and other acts prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code.

## THIRD CAUSE OF ACTION

## Violation Of California False Advertising, Common Law and Cal. Bus. & Professions Code §§ 17500 et seq.

90.    MOLDEX repeats, realleges and incorporates herein by reference the allegations contained in the preceding paragraphs as if fully set forth here.

91.    Honeywell's statements constitute untrue and/or misleading advertising, which it knew or should have known were untrue at the time the statements were made, and therefore violate California Business and Professions Code Section §§ 17500 et seq.

92.     Honeywell's false advertising has injured and continues to injure MOLDEX with no adequate remedy at law.  MOLDEX is entitled to a permanent injunction prohibiting Honeywell's wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

i.      That the Court enter judgment that Honeywell has competed unfairly pursuant to the Lanham Act, 15 U.S.C. § 1125(a), and the common law, and be permanently enjoined from continuing such conduct;

ii.     That the Court enter judgment that Honeywell has competed unfairly under California Business and Professions Code §§17200, et seq. and advertised falsely under §§ 17500, et seq.;

iii.    A preliminary and permanent injunction, pursuant to California Business and Professions Code § 17203, enjoining Honeywell from any further act of unfair competition; and

iv.     Such other and further relief as this Court may deem just and proper.

1    Dated:  April 5, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s Joseph M. Paunovich

Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Adam J. DiClemente (Bar No. 5287693)
adamdiclemente@quinnemanuel.com
Jacqueline M. Stykes (Bar No. 5656046)
jacquelinestykes@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff*

COMPLAINT

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury on all issues.

Dated:  April 5, 2021

Respectfully submitted,
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s Joseph M. Paunovich*

Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Adam J. DiClemente (Bar No. 5287693)
adamdiclemente@quinnemanuel.com
Jacqueline M. Stykes (Bar No. 5656046)
jacquelinestykes@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff*

-22-

COMPLAINT